UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORMAN DAVID BROOKS,                          :

        Plaintiff,                         :

       -against-                            :

FRIEDRICH VON LENTHE, MATTHIAS               :
SCHMIDT, NIKOLAI STULA, VGH,
SPARKASSE and NORD LB,                        :

       Defendants.                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 Civ. 3655 (RMB) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard M. Berman, United States District Judge:**

        Pro se plaintiff Norman David Brooks brought this action against defendants
Friedrich von Lenthe, Matthias Schmidt, Nikolai Stula, VGH, Sparkasse, and Nord LB alleging
numerous claims – discrimination, conspiracy against rights, deprivation of rights, severe mental
pain and suffering, slander, illegal confiscation, inhuman and degrading treatment, deprivation of
property, negligent misrepresentation, European Union and United Nations human rights violations,
fraud, breach of contract, insurance bad faith, and extortion – all arising out of a German insurance
company's refusal to pay plaintiff Brooks on an insurance policy issued in Germany for a loss of
personal property that occurred in Germany. (Dkt. No. 3: Am. Compl. at 1-2.) Defendants Friedrich
von Lenthe, Matthias Schmidt, Nikolai Stula and VGH (the "VGH defendants") and defendant

Norddeutsche Landesbank Girozentrale ("Nord/LB") have moved to dismiss plaintiff's Amended

Complaint (1) for lack of personal jurisdiction over the VGH defendants pursuant to Federal Rule

of Civil Procedure 12(b)(2); (2) on the basis of forum non conveniens as to all defendants; and

(3) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) against all defendants. (Dkt. No.

28: Defs. Notice of Motion & Affs.; Dkt. No. 29: Defs. Br.; Dkt. No. 34: Defs. Reply Br.)

For the reasons set forth below, defendants' motion to dismiss should be GRANTED.

## FACTS

### The Allegations in Brooks' Amended Complaint[1]

Plaintiff Norman David Brooks is a United States citizen who resides in Ontario,

California. (Dkt. No. 3: Am. Compl. at 3.) "Since 1989, plaintiff [Brooks] has been self employed

as an art and antiques dealer doing business in the United States and in Europe, with the majority of

his business being based in Europe." (Id. ¶ 1.) While in Europe, Brooks resided with his friend and

business associate, Gerhard Schmitt, in an apartment in Goettingen, Germany (id.), furnished with

valuable antiques (id. ¶ 21). Brooks frequently used Schmitt's residence to store his own

merchandise and personal belongings. (Id. ¶ 1.)

Schmitt maintained a property insurance policy issued by defendant VGH, an

insurance company based in Hannover, Germany[2], which covered all items contained within the

---

[1] The Court herein summarizes the allegations in Brooks' Amended Complaint, without use of the introductory phrase, "Brooks alleges."

[2] Defendants have informed the Court that "VGH is a marketing name for Landschaftliche Brandkasse Hannover, Provinzial Lebensversicherung Hannover, and Provinzial (continued...)

residence in Goettingen.  (Id. ¶ 21.)  In 1993, Schmitt updated the insurance policy from one that

allowed only twenty percent of the covered items to be "valuables" to one which allowed 100 percent

of the covered items to be valuables.  (Id.)  Schmitt apparently did so because he wanted to make

sure that the policy covered his antiques regardless of whether the insurance company classified them

as valuables or furniture.  (Id.)  As part of the 1993 policy update,  Schmitt agreed to a much higher

premium on the policy, and Schmitt sent photographs as well as a list of the values of all items in

the apartment to VGH for safekeeping in the company's files.  (Id. ¶ ¶ 21-23.)

Schmitt died on July 22, 2003.  (Id. ¶ 2.)  After an extended probate dispute, a

German probate court found Brooks to be the sole heir of Schmitt's possessions,  including all

merchandise and personal property in the apartment in Goettingen, as well as the VGH property

insurance policy.  (Id. ¶ ¶ 2, 14, 18.)  On two occasions during the probate dispute, Manfred Schmitt,

the estranged brother of Gerhard Schmitt, and Mrs. Toenges, Gerhard Schmitt's landlady, together

removed almost $300,000 worth of jewelry and other valuables from the apartment.  (Id. ¶¶ 3-11.)

VGH refused to honor Brooks' claims for the loss of these items under Schmitt's insurance policy.

(Id. ¶¶ 4, 30-32.)  Also during the probate dispute, on August 20, 2003, the day that the court-

appointed executor of Schmitt's will was to inspect the apartment in Goettingen, the apartment

---

[2/]    (...continued)
Krankenversicherung Hannover AG.  VGH is not a legal entity itself. . . .  Because this
distinction is not important for the purpose of this motion, Defendants will refer to the
purported insurer as VGH."  (Dkt. No. 29: Defs. Br. at 2 n.2; see also Dkt. No. 33: Weaver
Aff. Ex. 3: Knorr Aff. ¶ 2.)  The Court therefore also will refer to the insurance company as
VGH for the purposes of this case.

building caught fire, which destroyed many of the valuables inside the apartment, including some of Brooks' personal property and merchandise.  (Id. ¶¶ 16-18.)

Brooks made a claim under the VGH insurance policy for the cost of the property that the fire damaged or destroyed.  (Id. ¶¶ 24-26.)  Defendant Matthias Schmidt, a claims adjustor for VGH, told him that VGH would give him a maximum of 50,000 Euros in total payment of the claim relating to the fire damage.  (Id. ¶¶ 9, 28.)  Defendant Nikolai Stula, an independent art assessor for VGH, appraised several items at a mere fraction of their market value and improperly classified several items as valuables instead of as furniture, thereby leading to this low estimate.  (Id. ¶¶ 39-41.) The payment offered by VGH does not even come close to covering the cost of the lost and damaged property, and VGH improperly determined that only twenty percent of the insured property could be valuables, contrary to the 1993 policy amendment.  (Id. ¶¶ 29-32.)  VGH took the property remaining in the apartment into custody and will not release it until Brooks accepts the offered payment amount.  (Id. ¶ 38.)  Defendant Schmidt also verbally abused Brooks during the valuation process and told him that VGH had no record of Schmitt's 1993 property policy update.  (Id. ¶¶ 23, 32, 37.)

Brooks has not set forth any factual or legal allegations against defendant Friedrich von Lenthe, other than that, as a director of VGH, he "is being sued for damages his company inflicted upon the plaintiff."  (Id. at 3.)  Brooks has not set forth any allegations against defendant Sparkasse other than it "is being sued for the damages it's [sic] insurance branch inflicted upon the plaintiff."  (Id.)  Brooks has not set forth any allegations against Nord/LB other than it "is being sued

for the damages it's [sic] insurance branch the VGH, which the Nord LB owns and controls, inflicted upon the plaintiff." (<u>Id</u>. at 3-4.)

## Defendants' Motion to Dismiss

On August 25, 2005, the VGH defendants and Nord/LB submitted their initial joint motion to dismiss (Dkt. No. 28: Defs. Notice of Motion & Affs.; Dkt. No. 29: Defs. Br.), and on September 12, 2005, defendants submitted their reply papers (Dkt. No. 34: Defs. Reply Br.), both of which were accompanied by supporting affidavits (Dkt. Nos. 28, 33). In response, Brooks submitted his affirmations dated August 31, 2005 (Dkt. No. 32: 8/31/05 Brooks Aff.) and September 1, 2005 (Dkt. No. 36: 9/1/05 Brooks Aff.), attaching to both several documents in German, without translations.

## Defendants' Affidavits

The headquarters of defendant VGH are located in Hannover, Germany. (Dkt. No 28: Knorr Aff. ¶ 4.) None of the officers or directors of VGH resides in the United States. (<u>Id</u>.) None of the employees of VGH who were involved with Schmitt's property insurance policy reside in the United States. (<u>Id</u>.) VGH does not maintain any offices in the United States, conduct business in the United States, or solicit business in the United States. (<u>Id</u>. ¶ 5.) VGH is not licensed to issue insurance policies in the United States. (<u>Id</u>.) No affiliate of VGH conducts business in the United States or issues insurance policies in the United States. (<u>Id</u>.) VGH does not own any assets in the United States, and has not owned any assets in the United States for at least ten years. (<u>Id</u>. ¶ 6.) None of VGH's affiliates has owned any assets in the United States during the previous ten years. (<u>Id</u>.) VGH has not sent any correspondence to Brooks in New York State or California, nor has it

spoken with Brooks in New York State or California via telephone.  (Id. ¶ 7.)  VGH is not a parent, subsidiary or affiliate of Nord/LB.  (Dkt. No. 33: Weaver Aff. Ex. 3: Knorr Aff. ¶ 3.)

Since 1997, defendant Friedrich von Lenthe has been the chairman of the supervisory board of Landschaftliche Brandkasse Hannover and Provinzial Lebensversicherung Hannover, each of which uses "VGH" as a marketing name.  (Dkt. No. 28: Lenthe Aff. ¶ 1.)  Lenthe is a German citizen who resides in Gehrden, Germany.  (Id. ¶ 2.)  He has visited the United States twice for personal purposes, most recently in 1983, but he has never visited New York State.  (Id.)  Lenthe has never owned or rented property in the United States.  (Id. ¶ 3.)  Lenthe has never sent any correspondence to Brooks in New York State or California, or spoken with Brooks in New York State or California via telephone.  (Id. ¶ 5.)

Defendant Matthias Schmidt has been employed since 1989 by Landschaftliche Brandkasse Hannover and Provinzial Lebensversicherung Hannover, each of which uses "VGH" as a marketing name.  (Dkt. No. 28: Schmidt Aff. ¶ 1.)  Schmidt is a German citizen who resides in Hambühren, Germany.  (Id. ¶ 2.)  He visited the United States once in 2004 for personal purposes, but has never visited New York State.  (Id.)  Schmidt has never owned or rented property in the United States.  (Id. ¶ 3.)  Schmidt has never sent any correspondence to Brooks in New York State or California, or spoken with Brooks in New York State or California via telephone.  (Id. ¶ 5.)  All of Schmidt's conversations with Brooks relating to the events of this action occurred in Germany and were conducted in German.  (Id.)

Defendant Nikolai Stula has worked since 1989 as an external assessor for art items assigned on a case by case basis by VGH, but he is not employed by VGH. (Dkt. No. 28: Stula Aff.

¶ 1.) Stula is a German citizen who resides in Hannover, Germany. (<u>Id</u>. ¶ 2.) He visited the United States once, in 1984, but has never visited New York State. (<u>Id</u>.) Stula has never owned or rented property in the United States. (<u>Id</u>. ¶ 3.) Stula has never sent any correspondence to Brooks in New York State or California, or spoken with Brooks in New York State or California via telephone. (<u>Id</u>. ¶ 5.) All of Stula's conversations with Brooks relating to the events of this action occurred in Germany and were conducted in German. (<u>Id</u>.)

Defendant "Nord/LB is a German banking institution that is principally engaged in the business of banking." (Dkt. No. 28: Meinecke Aff. ¶ 2.) "Nord/LB does business in the United States through a branch located in New York, New York." (<u>Id</u>. ¶ 3.) Nord/LB does not currently employ, nor has it ever employed, any of the individual defendants. (<u>Id</u>. ¶ 5.) Nord/LB does not currently own (nor has it ever owned) VGH, in whole or in part. (<u>Id</u>. ¶ 6.) While Nord/LB has acted as an agent for VGH since 1994 in and around the German cities of Hannover, Hamburg, and Schwerin, Nord/LB does not now, nor has it ever, acted as agent for VGH in or around the German city of Goettingen. (<u>Id</u>.) Nord/LB does not maintain a branch or an office in Goettingen. (<u>Id</u>.) Nord/LB has never acted as an agent for VGH in the United States. (<u>Id</u>.) No records exist at Nord/LB, in Germany or in the United States, relating to Brooks, Gerhard Schmitt, or any of the allegations in this case. (<u>Id</u>. ¶ 7; <u>see also</u> <u>id</u>. at ¶ 9.)

**<u>Brooks' California Action</u>**

This action marks the second time that Brooks has sued the exact same defendants in the United States based on the same facts. Brooks filed a complaint in late March 2004, and an amended complaint on May 11, 2004, in the United States District Court for the Central District of

California against defendants Friedrich von Lenthe, Matthias Schmidt, Nikolai Stula, VGH, Sparkasse, and Nord LB alleging fourteen of the same causes of action as in this case (the California amended complaint did not include the fifteenth claim of extortion). (Dkt. No. 28: Valletta Aff. ¶ 2 & Ex. A at 1.) Defendants Friedrich von Lenthe, Matthias Schmidt, Nicolai Stula, and VGH moved to dismiss the California Action on May 21, 2004. (Dkt. No. 28: Valleta Aff. ¶ 3.) The California District Court granted the VGH defendants' motion to dismiss, by order filed on July 1, 2004, due to lack of personal jurisdiction. (Dkt. No. 29: Defs. Br.: Addendum.) Defendant Nord/LB also moved to dismiss the California amended complaint on July 6, 2004, for failure to state a claim, failure to join indispensable parties and forum non conveniens. (Valletta Aff. ¶ 5.) The California District Court granted Nord/LB's motion to dismiss by Order dated August 9, 2004. (Defs. Br.: Addendum.)

## ANALYSIS

### I. THE VGH DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION SHOULD BE GRANTED

#### A. The Standard Governing a Motion to Dismiss for Lack of Personal Jurisdiction

"On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, No. 03-9179, ___ F.3d ___, 2005 WL 2373831 at *4 (2d Cir. Sept. 28, 2005); DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Metropolitan Life Ins.

Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.), cert. denied, 519 U.S. 1006, 117 S. Ct. 508 (1996).

"Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 2005 WL 2373831 at *4; Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Ball v. Matallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196-97 (2d Cir.), cert. denied, 498 U.S. 854, 111 S. Ct. 150 (1990). "'[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]'" Whitaker v. American Telecasting, Inc., 261 F.3d at 208 (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)); see, e.g., DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; PDK Labs, Inc. v. Friedlander, 103 F.3d at 1108; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

"In assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in this instance New York.'" Whitaker v. American Telecasting, Inc., 261 F.3d at 208 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)); see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 2005 WL 2373831 at *4; DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; Bank Brussels Lambert v. Fiddler Gonzalez &

Rodriguez, 171 F.3d at 784; Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567.

"'If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process.'" Whitaker v. American Telecasting, Inc., 261 F.3d at 208; see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 2005 WL 2373831 at *4; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567.

### B. New York's Long-Arm Statute

New York's long-arm statute provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

C.P.L.R. § 302(a).[3/]

Personal jurisdiction over the VGH defendants is not appropriate under the first prong of New York's long-arm statute, C.P.L.R. § 302(a)(1). The VGH defendants' affidavits demonstrate that they are not transacting business in New York. VGH's headquarters are located in Hannover, Germany, VGH does not maintain any offices in the United States, VGH does not conduct business in the United States, and VGH does not solicit business in the United States. (Dkt. No. 28: Knorr Aff. ¶¶ 4-5.) VGH is not licensed to issue insurance policies in the United States, and no affiliate of VGH conducts business in the United States or issues insurance policies in the United States. (Id. ¶ 5.) Each of the individual defendants is a German citizen, and none of the individual defendants have ever visited New York State. (Dkt. No. 28: Lenthe Aff. ¶ 2; Schmidt Aff. ¶ 2; Stula Aff. ¶ 2.) The individual defendants have never sent any correspondence to Brooks in New York (or California), nor spoken with Brooks in New York (or California) via telephone. (Lenthe Aff. ¶ 5; Schmidt Aff. ¶ 5; Stula Aff. ¶ 5.) Brooks has not set forth any information in his opposition affidavits refuting the information in defendants' affidavits. (See generally Dkt. No. 32: 8/31/05

---

[3/] Brooks does not argue that the VGH defendants are "doing business" in New York so as to establish their presence in the State under C.P.L.R. § 301. "A foreign corporation is said to be 'doing business' in New York if it engages in a continuous and systematic course of conduct in New York." Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990), cert. denied, 498 U.S. 1028, 111 S. Ct. 681 (1991); see also, e.g., Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 762-63 (2d Cir. 1983). VGH does not solicit business, have an office or telephone number, have bank accounts or property, or employ individuals in New York. (See pages 5-6 above.) "[T]hus, none of the factors indicative of presence have been demonstrated." Mareno v. Rowe, 910 F.2d at 1046; see also, e.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985). Indeed, as demonstrated below, neither VGH nor the individual defendants are even transacting business in New York.

Brooks Aff.; Dkt. No. 36: 9/1/05 Brooks Aff.)  Brooks has not made a prima facie showing that

personal jurisdiction is appropriate over the VGH defendants under the first prong of the New York

long-arm statute because he has not shown that any of the VGH defendants transacted business

within New York or contracted to supply goods or services in New York.  See, e.g., Grand River

Enters. Six Nations, Ltd. v. Pryor, No. 03-9179, ___ F.3d ___, 2005 WL 2373831 at *5 (2d Cir.

Sept. 28, 2005) ("A nondomiciliary 'transacts business' under [C.P.L.R. § ] 302(a)(1) when he

purposefully avails [himself] of the privilege of conducting activities within [New York], thus

invoking the benefits and protections of its laws.") (quoting CutCo Indus., Inc. v. Naughton, 806

F.2d 361, 365 (2d Cir. 1986)); Fiedler v. First City Nat'l Bank, 807 F.2d 315, 317-18 (2d Cir. 1986)

(in a diversity case involving guaranties that were "part of an underlying Texas transaction, involving

Texas property, with Texas law governing[,]" two telephone calls and one mailing to New York

State were not enough to confer personal jurisdiction in New York under C.P.L.R. § 302(a)(1));

Beacon Enters., Inc. v. Menzies, 715 F.2d at 763-64 (plaintiff did not satisfy the "transacting

business test" of C.P.L.R. § 302(a)(1) where the only contacts by defendant California resident were

a "cease and desist" letter sent to plaintiff in New York and "her shipment of an unspecified number

of goods into New York."); compare, e.g., Great N. Ins. Co. v. Constab Polymer-Chemie GMBH,

No. 02-9199, 75 Fed. Appx. 824, 826, 2003 WL 22162376 (2d Cir. Sept. 19, 2003) (Plaintiff alleged

a prima facie case of personal jurisdiction over German defendant in New York under C.P.L.R.

§ 302(a)(1) where "'there was a contract to ship goods to New York . . . and goods were shipped

under that contract.'").

While Brooks claims that Nord/LB, which admittedly has an office in New York, is the parent company of VGH and employs the individual defendants – which defendants dispute (see pages 6-7 above and 20 below) – that does not change the result. The individual defendants did not transact any business, for VGH or Nord/LB, in New York; they did not communicate to Brooks from New York or into New York, nor visit New York for any reason. (See pages 6-7 above.) Even if VGH transacted other business in New York through Nord/LB, as Brooks implicitly alleges (and defendants deny), Brooks' claims here do not arise from any business that defendants transacted in New York – his claims arise from conduct in Germany. (See pages 2-4 above.) See, e.g., PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997); Johnson v. Ward, 4 N.Y.3d 516, 519-20, 797 N.Y.S.2d 33, 34-35 (2005); Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 829, 527 N.Y.S.2d 729 (1988). (See also Point II.B below.)

Personal jurisdiction over the VGH defendants is not appropriate under the second prong of New York's long-arm statute, C.P.L.R. § 302(a)(2). Brooks' claims arise out of a German insurance company's refusal to pay Brooks on an insurance policy issued in Germany for a loss of property that occurred in Germany. (See pages 2-4 above.) Brooks does not allege that any of the VGH defendants committed tortious acts within New York State, or even that they committed tortious acts within California, where Brooks resides. (Am. Compl. at 3.) Brooks therefore has not made a prima facie showing that personal jurisdiction over the VGH defendants is appropriate under C.P.L.R. § 302(a)(2). See, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789-90 (2d Cir. 1999) ("At minimum, to qualify for jurisdiction under [C.P.L.R. § 302(a)(2)], 'a defendant's act or omission [must have] occur[red] within the state.' . . . In Bensusan, we held that

a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."); Bensusan Rest. Corp. v. King, 126 F.3d 25, 28-29 (2d Cir. 1997); Feathers v. McLucas, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, cert. denied, 382 U.S. 905, 86 S. Ct. 241 (1965); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2).").

Personal jurisdiction over the VGH defendants is not appropriate under the third prong of New York's long-arm statute, C.P.L.R. § 302(a)(3). "'[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate "the original event which caused the injury."'" Whitaker v. American Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 791); DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). "'[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.' Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) . . . (where plaintiff lived in New York and sued his New Jersey employer for wrongful discharge, situs of injury was location of events which caused injury, i.e., New Jersey, not place where economic consequences were felt, i.e., New York)." Whitaker v. American Telecasting, Inc., 261 F.3d at 209; see also Hermann v. Sharon Hosp., Inc., 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (2d Dep't 1987) ("The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."). As the Second Circuit has stated, "'[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for

jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'" Whitaker v. American Telecasting, Inc., 261 F.3d at 209. Here, of course, Brooks does not even reside in New York.

Brooks' claims arise out of a German insurance company's refusal to pay Brooks on an insurance policy issued in Germany for a property loss that occurred in Germany. (See pages 2-4 above.) While Brooks alleges that the VGH defendants committed tortious acts in Germany, his complaint does not contain any allegations that those alleged tortious acts had any effect whatsoever in New York State, let alone an injury to person or property within New York. Nor has Brooks submitted any evidence that the VGH defendants expected their actions in Germany to hve consequences in New York. See, e.g., Bensusan Rest. Corp. v. King, 126 F.3d at 29 (New York "restricted the exercise of jurisdiction under sub-paragraph [302] (a)(3) to persons who expect or should reasonably expect the tortious act to have consequences in [New York] state . . ."). For all these reasons, Brooks has not made a prima facie showing that personal jurisdiction over the VGH defendants is appropriate under the third prong of New York's long-arm statute, C.P.L.R. § 302(a)(3).

Finally, personal jurisdiction over the VGH defendants is not appropriate under the fourth prong of New York's long-arm statute, C.P.L.R. § 302(a)(4). Brooks does not allege that the VGH defendants own, use, or possess any real property situated within New York State. Defendants' affidavits confirm that neither VGH as an entity, nor the individual defendants, own or ever owned any property or assets in the United States. (See pages 5-7 above.) And even if VGH (through Nord/LB) were held to own property in New York, Brooks' claims do not "arise from" the property.

Brooks therefore has not made a prima facie showing that personal jurisdiction over the VGH defendants is appropriate under C.P.L.R. § 302(a)(4).

* * * * *

Because Brooks has not made a prima facie showing that jurisdiction over the VGH defendants is appropriate under any prong of New York's long-arm statute, C.P.L.R. § 302(a), the Court need not address the question of whether personal jurisdiction "comports with the requisites of due process." E.g., Whitaker v. American Telecasting, Inc., 261 F.3d at 208-09.

For the reasons stated above, the VGH defendants' motion to dismiss for lack of personal jurisdiction should be GRANTED.

## II. NORD/LB'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE GRANTED

### A. The Standard Governing a Motion to Dismiss[4]

A district court should deny a Rule 12(b)(6) motion to dismiss "'unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief.'" IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993) (quoting Ryder Energy Distrib. Corp. v. Merrill

---

[4] For additional decisions by this Judge discussing the standard governing a motion to dismiss in language substantially similar to that in this section, see, e.g., Wong v. Health First Inc., 04 Civ. 10061, 2005 WL 1676705 at *1-3 (S.D.N.Y. July 19, 2005) (Peck, M.J.); Chase v. Czajka, 04 Civ. 8228, 2005 WL 668535 at *4-5 (S.D.N.Y. Mar. 23, 2005) (Peck, M.J.); Amadsau v. Bronx Lebanon Hosp. Ctr., 03 Civ. 6450, 2005 WL 121746 at *3 (S.D.N.Y. Jan. 21, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005) (Kaplan, D.J.); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1080-81 (S.D.N.Y. 1996) (Knapp, D.J. & Peck, M.J.); In re Towers Fin. Corp. Noteholders Litig., 93 Civ. 0180, 1995 WL 571888 at *11 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), report & rec. adopted, 936 F. Supp. 126 (S.D.N.Y. 1996) (Knapp, D.J.).

Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994).[5/]  A court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party – here, the plaintiff.  Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).[6/]

A motion to dismiss challenges only the face of the pleading.  Thus, in deciding a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991)).[7/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.

---

[5/]    Accord, e.g., Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir.), cert. denied, 534 U.S. 1071, 122 S. Ct. 678 (2001); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

[6/]    Accord, e.g., Freedom Holdings, Inc. v. Spitzer 357 F.3d at 216; Weinstein v. Albright, 261 F.3d at 131; In re Scholastic Corp. Sec. Litig., 252 F.3d at 69.

[7/]    Accord, e.g., Aniero Concrete Co. v. New York City Constr. Auth., 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b); Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Board of Managers of Cont'l Towers Condos, 848 F.2d 24, 25 (2d Cir. 1988).

E.g., Chambers v. Timer Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); Yak v. Bank Brussels Lambert, BBL (USA) Holdings, Inc., 252 F.3d 127, 130 (2d Cir. 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 1125 S. Ct. 1561 (1992)); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . ."); see also, e.g., Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994); Brass v. American Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.). "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Saunders v. Coughlin, 1994 WL 88108 at *2 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)). A Rule 12(b)(6) motion will be granted "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations.'" <u>Saunders</u> v. <u>Coughlin</u>, 1994 WL 88108 at *2 (quoting <u>Hishon</u> v. <u>King & Spalding</u>, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)).

When reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel.  <u>See</u>, <u>e.g.</u>, <u>LaBounty</u> v. <u>Adler</u>, 933 F.2d 121, 123 (2d Cir. 1991); <u>Watson</u> v. <u>McGinnis</u>, 964 F. Supp. at 131; <u>Saunders</u> v. <u>Coughlin</u>, 1994 WL 88108 at *2 (citing <u>Hughes</u> v. <u>Rowe</u>, 449 U.S. 5, 101 S. Ct. 173 (1980)).  However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . . " 2 <u>Moore's Federal Practice</u> § 12.34[4][a], at 12-72.7 (2005).  Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'"  <u>Id.</u>, § 12.34[1][b], at 12-61; <u>see also</u>, <u>e.g.</u>, <u>Joyner</u> v. <u>Greiner</u>, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege the facts tending to establish" that defendants violated his constitutional rights).

**B.** **Plaintiff's Veil Piercing Claim Against Nord/LB is Insufficient**

Brooks' only allegation against Nord/LB is that it "is being sued for the damages it's [sic] insurance branch the VGH, which the Nord LB owns and controls, inflicted upon the

plaintiff."[8] (Am. Compl. at 3-4.)  Read liberally, it appears that Brooks is attempting to pierce the

corporate veil in order to hold Nord/LB liable for the alleged tortious conduct of VGH.[9]

"New York courts 'disregard corporate form reluctantly.'" Bridgestone/Firestone, Inc.

v. Recovery Credit Servs., Inc, 98 F.3d 13, 17 (2d Cir. 1996); see also, e.g., Itel Containers Int'l Corp.

v. Atlanttrafik Express Serv. Ltd., 909 F.2d 698, 703 (2d Cir. 1990); Gartner v. Snyder, 607 F.2d

582, 586 (2d Cir. 1979).  "Under New York law, a court may pierce the corporate veil where 1) 'the

owner exercised complete domination over the corporation with respect to the transaction at issue,'

and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce

the veil.'" Mag Portfolio Consult., GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir.

2001); accord, e.g., American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

The Second Circuit has explained that:

---

[8]   Brooks also alleges that Nord/LB is the "parent company and employer of all of the defendants in this case," suggesting that there may be a direct employment relationship between the individual defendants and Nord/LB in which Nord/LB could be held vicariously liable for the individual defendants' alleged tortious conduct. (Am. Compl. at 3.)  However, Brooks also specifically alleges that defendants Lenthe and Schmidt work for VGH, and that Schmidt hired defendant Stula to perform an appraisal for VGH with respect to the VGH insurance policy (id. at 3, ¶ 39), demonstrating that the individual defendants worked for VGH, and at most were "employed" by Nord/LB only as the alleged corporate parent of their immediate employer VGH.  The Court therefore need not address any claim that Nord/LB would be vicariously liable for the alleged tortious conduct of the individual defendants because it is not their direct employer.

[9]   While defendants' affidavits demonstrate that Nord/LB is not the corporate parent of VGH (Meinecke Aff. ¶ 6), the Court assumes that it is the corporate parent of VGH for this analysis because in deciding a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6),  "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993).

Determining that veil-piercing is appropriate is a "fact specific" inquiry, and courts consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm['']s length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

Mag Portfolio Consult., GMBH v. Merlin Biomed Group LLC, 268 F.3d at 63; see also, e.g., American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d at 134; Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997).

Brooks' complaint contains no allegations that Nord/LB exercised complete domination over VGH in general or with respect to the insurance policy at issue in this case. (See pages 4-5 above.) Indeed, Brooks' complaint contains no allegations that Nord/LB was involved with this insurance policy at all. (Id.) Brooks' complaint also does not address any of the factors that courts consider in determining whether veil piercing is appropriate. Brooks' sole allegation in the complaint against Nord/LB is that it "is being sued for the damages it's [sic] insurance branch the VGH, which the Nord LB owns and controls, inflicted upon the plaintiff." (Am. Compl. at 3-4.) This allegation, without more, is insufficient to establish a claim of piercing the corporate veil. See, e.g., Cooper v. Parsky, 95 Civ. 10543, 1997 WL 242534 at *23-24 (S.D.N.Y. Jan. 8, 1997) (motion to dismiss piercing the corporate veil claim granted because plaintiff's complaint failed to allege at least two of the elements to prove a veil piercing claim), vacated on other grounds, 140 F.3d 433 (2d

Cir. 1998); <u>Jazini</u> v. <u>Nissan Motor Co., Ltd.</u>, 148 F.3d 181, 184 (2d Cir. 1998) ("Where, as here, the claim is that the foreign corporation is present in New York state because of the activities here of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state."); <u>American Fuel Corp.</u> v. <u>Utah Energy Dev. Co.</u>, 122 F.3d at 135 (court declined to pierce the corporate veil where corporation had no separate bank account and corporation's letterhead was the president's home address, but where there was no evidence that president used corporate funds for personal matters or intermingled corporate funds with his own, and president did not wrongfully use the corporate form to evade his arbitration agreement); <u>Thomson-CSF, S.A.</u> v. <u>American Arbitration Ass'n</u>, 64 F.3d 773, 778 (2d Cir. 1995) (plaintiff did not demonstrate that parent company had sufficient control over subsidiary to justify piercing the corporate veil where subsidiary functioned as a distinct entity and plaintiff did not show "an absence of corporate formalities," or "an intermingling of corporate finances and directorship."); <u>Itel Containers Int'l Corp.</u> v. <u>Atlanttrafik Express Serv. Ltd.</u>, 909 F.2d at 704 (court properly refused to pierce corporate veil where parent corporation did not dominate subsidiary, subsidiary observed corporate formalities, and subsidiary was responsible for its own everyday affairs without the interference of the parent); <u>American Protein Corp.</u> v. <u>AB Volvo</u>, 844 F.2d 56, 60 (2d Cir.) (plaintiff's showing that subsidiary had interlocking directorates with a corporate parent was insufficient to pierce corporate veil where subsidiary "maintained its own corporate and financial records, held independent board meetings,

and maintained separate corporate offices," and where parent did not make use of the subsidiary's corporate funds for its own benefit), cert. denied, 488 U.S. 852, 109 S. Ct. 136 (1988).[10/]

For the reasons stated above, Nord/LB's motion to dismiss for failure to state a claim on which relief can be granted should be GRANTED.[11/]

## CONCLUSION

The Court notes that this is the second time that Brooks has sued the exact same defendants in the United States based on the same events in Germany, and this will be the second time that a United States court has dismissed his case outright. This case is frivolous, and while plaintiff Brooks is pro se, that does not excuse him from the consequences of violating Rule 11 of the Federal Rules of Civil Procedure. While the Court at this time will not sua sponte impose Rule 11 sanctions on Brooks, he is on notice now that he may (and likely will) be sanctioned in the future for frivolous conduct if he were to file this case again in a United States court.

---

[10/] In other situations, the Court might be inclined to dismiss with leave to replead. However, in light of the fact that Brooks had brought a similar case in California that was dismissed, and that he did nothing to cure the defects found there when he brought this complaint, and the fact that defendants' affidavits explicitly deny that Nord/LB is the parent or subsidiary of VGH, Brooks' complaint should be dismissed without leave to replead. See, e.g., Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 168 (2d Cir. 2003) ("[T]he District Court did not abuse its discretion in denying [plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.'"); Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1096 (2d Cir. 1995) ("Finally, in light of the very fundamental differences in [plaintiff's] assertions . . . and the overall history of this litigation, the district court did not abuse its discretion by dismissing the Complaint without granting leave to amend.").

[11/] All defendants also moved to dismiss plaintiff's Amended Complaint on the basis of forum non conveniens. The Court need not reach that argument because the Amended Complaint should be dismissed as to all defendants on the grounds already discussed herein.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:    New York, New York
            October 21, 2005

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:    Norman David Brooks
            Carmine D. Boccuzzi, Jr., Esq.
            Chryssa V. Valletta, Esq.
            Judge Richard M. Berman